UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re:, ) | |
| ) | |
| JASON SHAWVER, et al., ) | Bankruptcy Case No. 19-04009-705 |
| ) | |
| Debtors, ) | |
| ) | |
| ) | |
| GCAP HOLDINGS LLC, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Case No. 4:20-cv-00820-SEP |
| ) | |
| JASON SHAWVER, et al., ) | |
| ) | |
| Appellees. ) | |

**MEMORANDUM AND ORDER**

GCap Holdings LLC appeals the Opinion and Findings of Fact and the Order of Judgment of the bankruptcy court. Appellant filed an Adversary Complaint against Jason Shawver and Briana Shawver to determine the whether the exceptions to discharge in 11 U.S.C. § 523(a)(2)(A) and (B) applied to Appellees' debt to Appellant. After holding a trial, the United States Bankruptcy Court for the Eastern District of Missouri issued its opinion finding that neither exception applied. For the reasons set forth below, this Court affirms.

**I.   BACKGROUND**

Appellees owned and operated Elysium Restoration and Design, L.P., a real estate restoration, construction, and design business. In or around June 2018, they applied to Appellant for a loan of $225,000. After reviewing the application, Appellant determined that the sum was too high based on Elysium's bank statements and its algorithm. Appellant requested additional information pertaining to Appellees' "construction contracts and the anticipated revenue stream from those contracts." Op. at 3. Appellees provided four signed proposals (Elysium Proposals) for a total value of approximately $520,000. On June 24, 2018, the parties participated in the "funding call"—a phone conversation that lasted less

1

than ten minutes during which the details of disbursement were finalized. Ultimately, Appellant provided $66,000 on June 25, 2018, to Appellees, who promised in return to pay $95,700 over the following 42 weeks in equal, weekly installments.

Appellees failed to make the weekly payment on October 22, 2018—within four months of receiving the loan. They filed for bankruptcy on November 3, 2018. Appellants argued that Appellees' debt should not be discharged because of the exceptions to discharge under 11 U.S.C. § 523(a)(2)(A) and (B). After a trial on these issues, the bankruptcy court found that Appellant was not entitled to an exception under either section. This appeal follows.

## II. LEGAL STANDARD

"When a bankruptcy court's judgment is appealed to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations de novo and findings of fact for clear error." *In re Falcon Products, Inc.*, 497 v. 838, 840-41 (8th Cir. 2007) (quoting *In re Fairfield Pagosa, Inc.*, 97 F.3d 247, 252 (8th Cir. 1996)). The Appellant challenges findings of fact of the bankruptcy court, so this Court will review its finding for clear error. *See* Doc. [7] at 1, 2. "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Peabody Energy Corp.*, 933 F.3d 918, 924 (8th Cir. 2019) (quoting *Hill v. Snyder*, 919 F.3d 1081, 1084 (8th Cir. 2019)).

## III. DISCUSSION

On appeal, Appellant argues that the bankruptcy court erred when it found that Appellees' debt to Appellant was not excepted from discharge under § 523(a)(2)(A) or (B).[1]

---

[1] The statute reads in relevant part:

> A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition or (B) use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the

2

### A. 11 U.S.C. § 523(a)(2)(A) Exception to Discharge

An exception to discharge under § 523(a)(2)(A) is warranted for debts for money or credit to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The creditor must show that "a debtor (1) made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the creditor, (4) who justifiably relied on the representation, and which (5) proximately caused the creditor damage." *In re Kinard*, 998 F.3d 352, 354-55 (8th Cir. 2021) (quoting *In re Hernandez*, 860 F.3d 591, 602 (8th Cir. 2017)).

Appellant alleges that the debtors obtained the loan because it relied on the false representation that Appellees had secured contracts worth approximately $520,000 from which they could repay a loan and that "such funds, as well as any other revenues generated from any payor were free and clear of any other obligations and solely belong to [Appellant]." Doc. [7] at 10. The bankruptcy court found that the debt was not excepted from discharge under § 523(a)(2)(A) because the first four elements were not met, and it did not consider causation.

In support of its false representation claim, Appellant presented evidence to the bankruptcy court about the topics and discussion of the funding call. Appellant's CEO Vsevolod Garanin, testified that they discussed the debtors' four contracts during the phone call. Appellant cites one page of testimony about the funding call to support this point. Doc. [7] at 4 (citing Tr. at 23[2]). But Mr. Garanin did not testify that he asked during the

---

creditor to whom the debtor is liable for such money or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceived. 11 U.S.C. § 523(a)(2)(A)-(B) (cleaned up).

[2]   Q   Okay. And did you have that funding call in this particular case?
     A   Yes, I did.
     Q   And who was on the call from your end?
     A   I was on the call.
     Q   Okay. And who was on the other end of the call?
     A   I recall Mrs. Shawver, I think Mr. Shawver was there in a silent capacity.
     Q   Okay. And did you have – and what – did you have a conversation with them concerning the issues relating to the ability to repay the loan you were about to extend?

funding call if the contracts represented only future revenues, or if such revenues were subject to any other obligations. When asked if Appellees indicated that the contracts "were for future work," he answered, "Yes, they did." Tr. at 23. But Mr. Shawver testified that he never told Appellant that the contracts represented only future revenues. Doc. [10] at 10 (citing Tr. 90:5-9[3]). The bankruptcy court found that Mr. Shawver was the more credible witness and concluded that Appellees did not make a false representation.

Appellant contests this conclusion by arguing that "both the Bankruptcy Court and Debtors fail to recognize that Debtors misrepresentations occurred *prior* to the funding call." Doc. [13] at 1 (citing Tr. at 18). Appellant points to Mr. Garanin's testimony, "not refuted" by any other evidence, that Appellant requested contracts to determine future cash flow and received the Elysium Proposals. It is true that Mr. Garanin testified that he "requested contracts as related to future cash flow of the business." Tr. at 18. But Mr. Shawver testified that he received a different message: Michelle Caruso, an independent contractor affiliated with Appellant, Tr. at 15, "said she needed *current contracts* to submit with the offer." Tr. at 89 (emphasis added). Mr. Shawver told Ms. Caruso that the contracts were "in progress contracts," and he testified that he never represented that the contracts represented only future revenue. Tr. at 89-90. Thus, there is evidence to support the bankruptcy court's finding that Appellees did not make a false representation under § 523(a)(2)(A). And the bankruptcy court's finding that Mr. Shawver's version of the story was more credible than Mr. Garanin's was not clear error.

---

    A    Yes, I did.
    Q    Okay. Did you specifically discuss these contracts?
    A    Yes, I did.
    Q    Did they, at any time, indicate that there had been payments already received on these contracts?
    A    No, they didn't.
    Q    Did they indicate to you that those were for future work?
    A    Yes, they did.

Tr. 23:5-23.

[3]    Q    Did you ever tell anyone from GCAP orally or in writing that the contracts that you provided them were for future revenue?
    A    No.

Tr. 90:5-9.

4

The bankruptcy court also found that Appellant did not "articulate[] its underwriting purpose for the Elysium Proposals during the Funding Call." Op. at 15. The finding that Appellees did not know the underwriting purpose for the proposals is not clear error, and that finding forecloses the possibility that Appellees had actual knowledge of the purported falsity of their representations. The bankruptcy court considered whether Appellees, because of their experience in acquiring cash advance loans, may have known that the proposals were relevant to Appellant only to the extent that they represented future income. Op. at 15. The bankruptcy court "found insufficient evidence that the Funding Call addressed the subject of Elysium Proposals' future receivables," and concluded that by the time of the funding call, Appellees "would have no reason to know that the Elysium Proposals were still a concern." *Id.* The Court agrees.

Finally, the Court notes that shifting the focus of this inquiry to the period before the funding call, as Appellant's brief suggests, does not bring to light a hidden error. Before the funding call, Appellant requested documents and banking information, and Appellees provided everything that was requested. The bankruptcy court found that the Appellees' openness and production of the information requested "can support their assertion of honest intent and substantially weaken" Appellant's argument that they intended to deceive it. The Court finds no clear error in that determination.

For the foregoing reasons, the Court is not "left with the definite and firm conviction that a mistake has been committed" in finding that Appellees made no false representation. *In re Peabody Energy Corp.*, 933 F.3d at 924. Therefore, the bankruptcy court's holding that Appellant's debt is not excepted from discharge under § 523(a)(2)(A) is affirmed.

### B.  11 U.S.C. § 523(a)(2)(B) Exception to Discharge

A debt for money or an extension, renewal, or refinancing of credit is excepted from discharge under § 523(a)(2)(B) to the extent it is obtained by the use of a statement in writing:

(1) that is materially false;

(2) respecting the debtor's or insider's financial condition;

(3) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(4) that the debtor caused to be made or published with intent to deceive.

5

11 U.S.C. § 523(a)(2)(B).

The bankruptcy court found that Appellant satisfied the first two elements of a § 523(a)(2)(B) exception to discharge. Appellant asks the Court to reverse the findings that it did not reasonably rely on those documents and that the debtor did not intend to deceive. Doc. [7] at 12.

The bankruptcy court found that Appellant failed to conduct minimum investigation into the documents that Appellees' provided, did not request basic financial documents, and disregarded red flags about Appellees' ability to repay the loan. For example, Appellant claims that it reasonably relied on the Elysium Proposals, believing that those proposals represented roughly $520,000 in future revenue. Doc. [7] at   But the bankruptcy court found that "minimal investigation and basic due diligence" would have revealed that the Elysium Proposals did not represent exclusively future revenue. Op. at 10. *See In re Jones*, 31 F.3d 659, 662 (8th Cir. 1994) (quoting *In re Coston*, 991 F.2d 257, 261 (5th Cir. 1993) (en banc) (per curiam)); *see also Matter of Osborne*, 951 F.3d 691, 698 (5th Cir. 2020) (quoting *In re Coston*, 991 F.2d at 261) (courts can consider whether "minimal investigation would have revealed the inaccuracy of the debtor's representations")). Specifically, one of the proposals required the customer to pay $58,300 at the signing of that proposal, which occurred five months before funding. Op. at 10. Had Appellant conducted even minimal investigation of the proposals that it asserts justified its extension of credit, it would have noticed that funds were due months before disbursement of Appellant's funds. *Id.* As a result, the bankruptcy court found that Appellant's reliance on the Elysium Proposals to determine that Appellees were expecting $520,000 in future revenue was unreasonable.

Appellant challenges the bankruptcy court's finding that Appellant should have read the documentation provided, but it does not challenge the bankruptcy court's interpretation of the contract. Doc. [7] at 13-15. In the absence of evidence to the contrary, the Court finds that the bankruptcy court did not commit clear error when it found that Appellant unreasonably relied on the Elysium Proposals. Because the Court affirms the bankruptcy court's findings as to reasonable reliance, it does not need to consider the bankruptcy court's findings as to Appellees' intent to deceive.

6

Accordingly,

**IT IS HEREBY ORDERED** that the Order of Judgment of the United States Bankruptcy Court for the Eastern District of Missouri is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum & Order.

Dated this 30th day of September, 2021.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE